UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANDREA RIGGS,

                         Plaintiff,

-against-

AKAMAI TECHNOLOGIES, JASON HICKEY, JAMES MASSEY and STEPHEN GOLDSTEIN,

                         Defendants.

No. 1:23-CV-06463-LTS

---

### MEMORANDUM ORDER

Andrea Riggs ("Plaintiff") brings this action against Akamai Technologies ("Akamai"), Jason Hickey ("Hickey"), James Massey ("Massey"), and Stephen Goldstein ("Goldstein") (together, "Defendants"), asserting claims predicated on alleged violations of Title VII of the Civil Rights Act of 1965 ("Title VII"), 42 U.S.C. § 2000e et seq., the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 et seq., and the New York City Human Rights Law ("NYCHRL"), N.Y., Code § 8-107 et seq. (Docket entry no. 33 (the "Amended Complaint" or "AC").) The Court has jurisdiction of this action pursuant to 28 U.S.C. sections 1331 and 1367.

        The case is before the Court on Defendants' Motion to Dismiss counts one through six of the Amended Complaint for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), or stay the Amended Complaint and compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2 et seq. (Westlaw through P.L. 118-64). (Docket entry no. 34 ("Notice of Motion to Dismiss and Compel Arbitration").) The Court has carefully considered the submissions of both parties and, for the

following reasons, Defendants' motion to compel arbitration is denied. Defendants' motion to dismiss the Amended Complaint is granted in part and denied in part.

BACKGROUND

Unless otherwise indicated, the following allegations are taken from the Amended Complaint, all well-pleaded factual content of which is presumed true for purposes of this motion practice.

From the beginning of her employment in 2013, Plaintiff was the target of her male colleagues' sexist comments, some of which were sexually explicit. Plaintiff's previous supervisor, John Kelly ("Kelly"), evoked negative gender stereotypes to disparage her. In 2013, Kelly called Plaintiff a "soccer mom with five kids," suggested that she "would not cut it at Akamai" as a working woman, and asked Plaintiff, "[w]hy don't you stay home and be a mom?" (AC ¶ 62.) After Plaintiff received a promotion in 2015, her new supervisor, Hickey, continued to target her with sexist remarks. In 2020, Hickey criticized Plaintiff for being "bossy" and "coming across as a 'tough woman." (Id. ¶ 67.) In 2022 and 2023, Hickey said that Plaintiff was "mothering her accounts" and "nurtur[ing] and protect[ing] her customers," and he suggested that Plaintiff needed to be "more assertive." (Id. ¶ 68.)

Plaintiff also experienced a continuing pattern of inappropriate comments from her co-workers. Beginning in 2014 and continuing through February 2024, male employees at Akamai made numerous vulgar and sexist comments about Plaintiff's sex life, relationship status, and personality. (Id. ¶¶ 77, 87 (e.g., telling Plaintiff that she needed to "get her chimney cleaned").) During a 2022 team building event, Massey said "[t]his is what I do to my wife" while "kneading pizza dough directly across the table" from Plaintiff, leaving her "embarrassed and humiliated." (Id. ¶¶ 81-82.) In February 2023, Goldstein asked Plaintiff if she was "having

sex with anyone" and if "her sex life was better." (Id. ¶ 80.) At least one other female employee was subjected to similar sexual comments. (Id. ¶ 80).

Plaintiff also alleges that she was treated differently at Akamai because of her gender. She was denied access to a firm-owned private suite for meetings with customers (id. ¶ 95), lost her accounts to male colleagues due to reassignments (id. ¶¶ 71-73, 92), and was told explicitly that she was denied consideration for a promotion because she was going through a divorce and had five children. (Id. ¶¶ 63-64.) Like the sexual comments, this pattern of differential treatment began with Kelly and continued when Hickey became Plaintiff's new supervisor. Since 2020, Hickey has excluded Plaintiff from multiple social events to which male employees were invited. (Id. ¶¶ 84-86.) Hickey also denied Plaintiff opportunities and resources to succeed at work. In 2020, Hickey took an account from Plaintiff to reassign it to a male employee, saying that he was honoring the client's request. (Id. ¶¶ 71-73.) At one point, Hickey assigned a male employee's small account to Plaintiff so that the man could "focus on the big boy accounts," but he gave Plaintiff additional small, problematic accounts when she was busy with a merger. (Id. ¶¶ 89-90.)

Plaintiff also describes two other disturbing work-related incidents in detail. In 2013, Plaintiff was asked to leave a company reception for "ruining the fun" after she was called a "damper" and a "nun." (Id. ¶¶ 37-39.) At the demand of her male colleagues, a drunk customer entered Plaintiff's taxi, sat on Plaintiff's lap and grabbed Plaintiff's breasts. (Id. ¶¶ 41-46.) The male colleagues laughed while watching the assault. (Id. ¶ 47.) One male co-worker recorded the incident on video and repeatedly played the video in the office to share it with Plaintiff's other colleagues, which made her a "running joke" and "urban legend." (Id. ¶¶ 47, 53-58.) The second incident occurred in 2016 during a team social event at a bar. After Plaintiff

"playfully flicked her drink" at him twice, Plaintiff's colleague, James Massey ("Massey"), "grabbed her forearms, pushed her backward into other patrons, and pinned her against a wall," screaming, "I told you not to do it again – do you hear me now?"[1] (Id. ¶ 31.)

In January 2023, Plaintiff received a "partially meeting expectations" evaluation for "narrowly miss[ing] her quota," after Akamai reassigned her "large, top-tier" account to Massey. (Id. ¶¶ 97-99.) Most team members did not meet their quotas, and none of the men who missed their quotas were "dismissed."[2] (Id. ¶ 99.) When she received the evaluation from Hickey, Plaintiff "protested" by saying that she was the "most tenured person on [her] team, managing most accounts," and took on the most responsibilities. (Id. ¶ 100.) Around March 2023, Hickey told Plaintiff that she was "headed down the path of a PIP,"[3] making it clear that no previous employees had retained their jobs after being put on PIPs, and that there was "no place" for Plaintiff at Akamai "regardless of how well she performed." (Id. ¶¶ 102-103.) Plaintiff was told to choose between accepting a PIP and finding another job within ninety days. (Id. ¶ 104.) Plaintiff has not disclosed any subsequent events in her Amended Complaint, including whether she ever accepted the PIP or chose to search for alternative jobs.

---

[1] Plaintiff alleges in the Amended Complaint that she was the "only woman" who attended the event (AC ¶ 28) but also alleges that, when she escaped into the ladies' room after the incident, she was "comforted" by a female colleague who revealed that Massey had also made explicit sexual comments to her (id. ¶ 33). While Rule 8(d) allows pleadings that contain contradictory claims, it does not authorize contradictory factual allegations. Ulloa v. Takata Corp., TK Holdings Inc., No. 16-CV-6225-KMW-BCM, 2017 WL 1194691, at *3 (S.D.N.Y. Mar. 30, 2017). Therefore, the Court does not consider these contradictory facts in Plaintiff's Amended Complaint for this instant motion.

[2] Plaintiff does not allege whether men who missed their quotas received negative performance evaluations, were threatened with PIPs, or were put on PIPs.

[3] The parties use the term "PIP" to refer to a "Performance Improvement Plan."

On June 29, 2023, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC Charge" and the "EEOC") and received a Notice of Right to Sue on October 23, 2023.  (Id. ¶ 7.)  Plaintiff commenced the instant action on July 26, 2023.  (See docket entry no. 1 (the "Complaint").)

DISCUSSION

Motion to Compel Arbitration

Defendants move to compel arbitration, asserting that Plaintiff's claims fall within the scope of a valid arbitration agreement and that Plaintiff has failed to plead a plausible sexual harassment claim.  (See Notice of Motion to Dismiss and Compel Arbitration; docket entry no. 35 ("Defs. Mem.").)  The parties do not dispute that Plaintiff signed a valid and relevant arbitration agreement when she began her employment at Akamai (see docket entry no. 36-1), nor do they dispute that the federal Ending Forced Arbitration Act ("EFAA") renders the arbitration agreement invalid and unenforceable if her case "relates to" a sexual harassment dispute, which is defined as a "dispute relating to conduct that is alleged to constitute sexual harassment."  9 U.S.C.A. §§ 401(4), 402 (Westlaw through P.L. 118-64).  The parties disagree on two issues: whether the Amended Complaint plausibly states a sexual harassment claim, and if not, whether the EFAA still applies when a plaintiff asserts a sexual harassment claim but does not plead the claim plausibly. [4]

---

[4] To be sufficient to survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), and "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009).  In deciding a Rule 12(b)(6) motion to dismiss, the Court must "draw all reasonable inferences in [p]laintiff's favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." Faber v. Metro. Life Ins. Co., 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).  "In adjudicating a motion to dismiss, a court may consider only the complaint,

The Amended Complaint generally characterizes the claims pleaded as ones for "discrimination" and "retaliation" notwithstanding clear descriptions of alleged incidents of sexual harassment.  The EFAA does not, however, require a plaintiff to "style" her claims as a sexual harassment complaint; rather, it is sufficient that – looking at the underlying substance of the allegations – the plaintiff states a claim for sexual harassment that is plausible on its face.  Delo v. Paul Taylor Dance Found., Inc., 685 F. Supp. 3d 173, 182 (S.D.N.Y. 2023).  As explained below, because Plaintiff has pleaded her sexual harassment claims plausibly and the entire case relates significantly to allegations of harassing conduct, the arbitration clause is rendered invalid by the EFAA with respect to the entire case, and the Court denies Defendants' motion to compel arbitration.

Hostile Work Environment Claims

The Court construes Plaintiff's federal claim regarding sexual harassment as an allegation that she was subjected to a hostile work environment in violation of Title VII.  To state such a claim, a plaintiff must plead facts that support three elements: (1) the alleged conduct is "objectively severe or pervasive" such that it "creates an environment that a reasonable person would find hostile or abusive"; (2) the plaintiff "subjectively perceives" the environment as "hostile and abusive"; and (3) such an environment is created because of the plaintiff's sex.

---

any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies."  In re Thelen LLP, 736 F.3d 213, 219 (2d Cir. 2013), certified question accepted sub nom. Thelen LLP v. Seyfarth Shaw LLP, 22 N.Y.3d 1017 (2013), and certified question answered, 24 N.Y.3d 16 (2014) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002)).  The Court accepts as true the non-conclusory factual allegations in the Amended Complaint and draws all reasonable inferences in the nonmoving party's favor.  Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007).  Because, as explained below, Plaintiff has pleaded the claim plausibly, the Court need not reach the question of whether the case could escape the arbitration clause even if the sexual harassment claim were not pleaded sufficiently.

Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (citing Gregory v. Daly, 243 F.3d 687, 691-92 (2d Cir. 2001)) (internal citations and punctuation omitted).  As to the first element, a court assesses the objective hostility of the environment by considering the "totality of circumstances," focusing on four main factors: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance."  Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).  No single factor is required.  Id.

    Plaintiff has stated plausibly a hostile work environment claim under Title VII.  First, the Amended Complaint sufficiently alleges facts that constitute an objectively hostile and abusive environment – the alleged discriminatory conduct it depicts was frequent, severe, threatening, and humiliating.  In the two to three years preceding the commencement of this action, Hickey allegedly disparaged Plaintiff's work capacities based on gendered stereotypes repeatedly, first accusing her of being "bossy" and then criticizing her for "nurturing" and "protecting" her customers.  (AC ¶ 68.)  In addition, Goldstein and other male colleagues targeted Plaintiff with vulgar, sexual questions and ridicule, explicitly joking about her private relationships and making unsolicited comments about her sex life.  (Id. ¶ 77, 87.)  Taking all of the facts in the Amended Complaint as true, a reasonable fact finder could conclude that the sexual harassment in Plaintiff's work environment at Akamai was objectively both severe and pervasive.  See Moll v. Telesector Res. Grp., Inc., 94 F.4th 218, 234-35 (2d Cir. 2024) (finding, on summary judgment, that a reasonable jury could find a workplace with "many" and "regular" "overtly sexual or sexist comments, sexual innuendos, and gender-based disparagements" was objectively hostile and abusive).  As to the second element, the parties do not dispute that Plaintiff finds her work environment at Akamai subjectively hostile.  Moreover, Plaintiff has

alleged enough facts – for example, facts illustrating the pervasiveness of gender stereotyping at her workplace – to show that the hostility and abusiveness she experienced was in part motivated by her gender.  See Johnson v. J. Walter Thompson U.S.A., LLC, 224 F. Supp. 3d 296, 310-11 (S.D.N.Y. 2016) (calling a female employee "bossy" was not sex-neutral because it invoked double standards for men's and women's leadership in the workplace); Back v. Hastings On Hudson Union Free Sch. Dist., 365 F.3d 107, 122 (2d Cir. 2004) (stereotyping women as caregivers can "by itself and without more" constitute evidence of an impermissible, sex-based motive).  Because the Amended Complaint satisfies all three elements, Plaintiff has pleaded plausibly a sex discrimination-based hostile work environment claim under Title VII.

        Citing Title VII's administrative exhaustion and limitations provisions, Defendants nonetheless argue that Plaintiff has failed to plead a viable sexual harassment claim under Title VII to the extent that her claim is premised on acts occurring prior to September 2, 2022, which is the date 300 days before the date on which Plaintiff filed her EEOC Charge.  (Defs. Mem. at 12; see 42 U.S.C.A. § 2000e-5(e)(1) (Westlaw through P.L. 118-65); Ford v. Bernard Fineson Dev. Ctr., 81 F.3d 304 (2d Cir. 1996) (noting that a plaintiff has 300 days to file a claim with the EEOC in New York because New York has its own anti-discrimination laws and enforcement agencies).)[5]  Ordinarily, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete

---

[5]    The statute of limitations for hostile work environment claims under both NYSHRL and NYCHRL is three years.  Bermudez v. City of New York, 783 F. Supp. 2d 560, 607-608 (S.D.N.Y. 2011).  Due to the COVID-19 pandemic, the Governor of New York issued Executive Order 202.8 on March 20, 2020, which tolled the statute of limitations of "any commencement, filing or service of any legal action . . . as prescribed by the procedural laws of the state, including but not limited to . . . local law" until November 3, 2020.  N.Y. Exec. Order 202.8 (March 20, 2020); N.Y. Exec. Order 202.67 (Oct. 4, 2020).  Thus, claims based solely on events that occurred before November 13, 2019, are untimely under state and local human rights laws.

discriminatory act starts a new clock for filing charges alleging that act." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).  However, "[h]ostile environment claims are different in kind from discrete acts," in that "[t]heir very nature involves repeated conduct." Id. at 115.  The Court may apply a statute of limitations exception for hostile work environment claims if the discrimination constitutes a "continuing violation" that amounts to a "discriminatory policy or practice."  Banks v. Gen. Motors, LLC, 81 F.4th 242, 259 (2d Cir. 2023) (quoting Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 713 (2d Cir. 1996)). Defendants here argue that the untimely allegations do not constitute a "continuing violation" with the timely allegations and that, once the Court disregards time-barred events, the remaining incidents cannot support a plausible hostile work environment claim.  (See docket entry no. 43 ("Def. Reply") at 5-7.)

In the Second Circuit, a court may consider discriminatory incidents that would otherwise be time barred if the untimely incidents are "sufficiently related" to a discriminatory incident which occurred within the limitations period.[6]  McGullam v. Cedar Graphics, Inc., 609 F.3d 70, 77 (2d Cir. 2010).  A court must make an "individualized assessment of whether incidents and episodes are [so] related" that the continuing violation doctrine may apply to permit the consideration of time-barred incidents.  Id. at 77.  Although there is no uniform approach, three relevant principles from case law guide the Court's analysis.  First, incidents of different natures that are separated by an extended period of inactivity are typically not sufficiently related.  See Irrera v. Humpherys, 695 F. App'x 626, 629 (2d Cir. 2017) (summary

---

[6] Because the statute of limitations is an affirmative defense, dismissal under Rule 12(b)(6) is only appropriate when it is clear from the face of the complaint that Plaintiff's claims are time-barred.  Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425-26 (2d Cir. 2008).  Thus, the Court considers Plaintiff's undated factual allegations timely for the purposes of this motion.

order) (acts committed by the same harasser, one in 2010 and 2011 and two others in 2012 and 2014, were not sufficiently related due to the multiple years of inactivity in-between); Staten v. City of New York, 653 F. App'x 78, 80 (2d Cir. 2016) (summary order) (denying sufficient relatedness when the plaintiff's timely complaints regarding unfair work assignments and orders differed in nature from the untimely ones about derogatory comments).  Second, incidents arising from different departments generally are not sufficiently related because each department is a separate work environment.  See Gordon-Mallett v. Mount Sinai Hosps. Grp., Inc., No. 22-CV-1159-LJL, 2024 WL 1513910, at *8 (S.D.N.Y. Apr. 8, 2024) (events occurring in one department involving a different supervisor was unrelated to alleged discrimination experienced in another department months before).  Third, the incidents are likely sufficiently related when they involve similar actors who repeat comments or behaviors.  See King v. Aramark Servs. Inc., 96 F.4th 546, 553 (2d Cir. 2024) (finding relatedness because differential treatment by one supervisor constituted a "steady course of mistreatment"); James v. Van Blarcum, 782 F. App'x 83. 84-85 (2d Cir. 2019) (summary order) (overt racial comments by multiple employees within and outside the statutory period were sufficiently related).

    Applying these principles here, the Court agrees with Defendants that the 2013 taxi assault incident and the 2017 physical assault incident were not sufficiently related to Plaintiff's timely claims because they were different in nature than the timely incidents (vulgar comments and disparagement of work performance based on gender stereotypes) and happened years before with a long period of inactivity.  The Court also finds the pre-2015 incidents unrelated insofar as they were analogous to incidents arising out of different work environments, as Plaintiff's timely claims mainly involved her current supervisor (Hickey) and colleagues (Massey, Goldstein) who were not the subjects of her pre-2015 allegations.  Finally, all of

Plaintiff's factual allegations against Hickey are sufficiently related as they all involved Plaintiff's identity as a working woman and mother.

As explained above, Plaintiff has pleaded a plausible hostile work environment claim under Title VII considering the totality of circumstances after the Court disregards her untimely allegations. This is especially true given that a plaintiff only bears the burden of pleading enough facts to show that a reasonable employee would find her "conditions of [] employment altered for the worse." Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003) (emphasis omitted). Because Title VII imposes a higher standard than the NYSHRL and NYCHRL, the Court also denies the motion to dismiss Plaintiff's hostile work environment claims under the state and local human rights laws.[7]

Because Plaintiff has plausibly plead a sexual harassment claim under the hostile work environment theory, pursuant to the EFAA, the arbitration clause is rendered invalid with respect to the entire case. The Court denies Defendants' motion to compel arbitration, denies Defendants' motion insofar as it seeks the dismissal of Plaintiff's hostile work environment

---

[7] While there is no individual liability under Title VII, the Court denies the motion to dismiss the state and local law sexual harassment claims against Massey, Goldstein, and Hickey because Plaintiff plausibly alleges that the individual defendants "aided and abetted" the creation and sustenance of the hostile and sexist work environment. Both the NYSHRL and the NYCHRL prohibit "aid[ing], abet[ting], incit[ing], compel or coerce the doing" of any unlawful acts of discrimination under either title, including sexual harassment. N.Y. Exec. Law § 296(6); N.Y.C Admin. Code § 8-107(6). The state and city laws apply the same standard to aiding and abetting claims, which generally makes a co-worker liable if they "actually participate[] in the conduct giving rise to a discrimination claim." Feingold v. New York, 366 F.3d 138, 158 (2d Cir. 2004). In the Amended Complaint, Plaintiff alleges that the individual defendants subjected her to vulgar and sexist comments, which are sufficient to allow a reasonable employee to find that the conditions of her employment altered for the worse. (AC ¶¶ 67-68, 80-82.) The Court therefore denies the motion to dismiss sexual harassment claims against individual defendants under state and local human rights laws.

claims for failure to state claims upon which relief may be granted, and now turns to the sufficiency of Plaintiff's disparate treatment claims and retaliation claims.

### Disparate Treatment

To survive a motion to dismiss a disparate treatment claim under Title VII, a plaintiff must plausibly allege that "the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." Santiago v. ACACIA Network, Inc., 634 F. Supp. 3d 143, 152 (S.D.N.Y. 2022) (citing Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015)). The parties do not dispute that Plaintiff belongs to a protected class or that she was qualified. As discussed above, Plaintiff has pled enough facts – such as the gender stereotypes and the sexually explicit comments to which she was subjected – to support an inference of discriminatory intent under her minimal burden at this stage. The only remaining question is whether the Plaintiff has plausibly alleged that she suffered an adverse employment action.

In its recent decision in Muldrow v. City of St. Louis, Missouri, the Supreme Court clarified that a plaintiff only needs to show "some harm" with respect to an "identifiable term or condition of employment" to establish an adverse employment action under Title VII. 144 S. Ct. 967, 975 (2024). "What the [plaintiff] doesn't have to show. . . is that the harm incurred was 'significant', [s]erious, or substantial." Id. The differential treatment that Plaintiff alleges here is similar to that at issue in Muldrow, where the plaintiff was left "worse off several times over" when she was transferred to a less prestigious position with lower visibility and less significance, and had fewer opportunities to "network," although her pay and most of her benefits remained the same. Id. at 976-77. Here, Plaintiff had to devote her time to less

prestigious matters than those assigned to her male co-workers when Hickey gave her additional small, problematic accounts (which, she further alleges, caused her to miss her sales quota), and she also lost networking opportunities as a result of being excluded from social events. (AC ¶¶ 89-90, 84-86.) Thus, Plaintiff has pleaded plausibly a disparate treatment claim under Title VII.[8] Because Title VII imposes a higher pleading standard than either the NYSHRL and NYCHRL, the Court also denies Akamai and Hickey's motion to the extent they seek the dismissal of Plaintiff's disparate treatment claims under state and local law. The Court grants Massey and Goldstein's motion to dismiss the disparate treatment claims to the extent that Plaintiff makes no timely allegations against them under state and local human rights laws in connection with the disparate treatment claims.

Retaliation

The Court grants Defendants' motion to dismiss Plaintiff's retaliation claims because Plaintiff has failed to plausibly plead a retaliation claim under even the most lenient pleading standard, which is set by the NYCHRL. To survive a motion to dismiss a retaliation claim under the NYCHRL, a plaintiff needs to plead facts that satisfy four prongs: (1) the plaintiff has engaged in protected activity; (2) the employer was aware that the plaintiff participated in protected activity; (3) the employer "engaged in conduct that was reasonably

---

[8] The Court need not decide whether the "partially meeting expectations" evaluation and the alleged PIP threat can form a separate basis for Plaintiff's disparate treatment claim, because the claim survives the motion to dismiss based on the account assignment and social exclusion allegations. Under the Second Circuit's pre-Muldrow standard (requiring a "materially adverse change"), a negative review alone without additional consequences (such as a demotion, diminution of wages, or other tangible loss) cannot by itself constitute an adverse employment action. See Siddiqi v. New York City Health & Hosps. Corp., 572 F. Supp. 2d 353, 367 (S.D.N.Y. 2008). Here, Plaintiff does not allege that she suffered any "tangible loss" other than the threat of being placed on a PIP. The Court need not – and does not – decide, at this stage, whether a negative review alone constitutes an adverse employment action post-Muldrow.

likely to deter a person from engaging in that protected activity"; and (4) a causal relationship between the protected activity and the employer's conduct.  Ruiz v. Armstrong, 207 N.Y.S.3d 374, 398 (N.Y. Sup. Ct. 2024).  Plaintiff has failed to allege plausibly that the employer was aware of Plaintiff's participation in protected activity.  (See Defs. Mem. 20-22.)  Here, Plaintiff argues that she engaged in protected activity when she "protested" to Hickey about the January performance review and, as a result, Hickey retaliated by threatening her with a PIP.  (See docket entry no. 38 ("Pl. Mem.") at 24.)  To satisfy the second prong, however, a complaint cannot be so "vague or generalized" that the employer could not "reasonably have understood" that the plaintiff was engaging in protected activity.  Ruiz, 207 N.Y.S.3d at 399.  Protesting that she was the most qualified, hard-working, or the most senior, employee could enable a reasonable employer to conclude that Plaintiff protested the evaluation's unfairness as to her efforts and qualifications, but it does not suggest that Plaintiff protested disparate treatment due to her gender.  See Batchelor v. City of New York, 12 F. Supp. 3d 458, 482 (E.D.N.Y. 2014) (finding that the objection, "[t]hat's not fair. That's not the way you do business," was too generalized to be understood as a complaint regarding gender discrimination); Kearney v. ABN AMRO, Inc., 738 F. Supp. 2d 419, 431-32 (S.D.N.Y. 2010) (concluding that complaining to a supervisor about lower pay without mentioning the plaintiff's sex or age does not put the employer on notice of protected activity).  Because Plaintiff fails to plead facts sufficient to establish a plausible retaliation claim under the most lenient standard, the Court grants Defendants' motion to dismiss the retaliation claims asserted under Title VII, NYSHRL, and NYCHRL.

### Leave to Amend

Rule 15(a) provides that a court "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  There is a particularly strong preference for allowing

amendment when "the plaintiff has not had the benefit of a court ruling with respect to the deficiencies of its pleading." Allianz Glob. Invs. GmbH v. Bank of Am. Corp., 473 F. Supp. 3d 361, 365 (S.D.N.Y. 2020); see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC, 797 F.3d 160, 190 (2d Cir. 2015) ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies."). Because this is the first time the Court has put Plaintiff on notice with respect to the deficiencies of the retaliation claims and the disparate treatment claims against Massey and Goldstein, Plaintiff is granted leave to file a motion to amend the complaint within 21 days of the entry of this Memorandum Order. Any such motion must comply with the applicable federal and local rules of motion practice and include Plaintiff's proposed Second Amended Complaint, as well as a redline comparing that pleading to Plaintiff's First Amended Complaint. Should Plaintiff fail to file a motion for leave to amend within 21 days of the entry of this Memorandum Order, Plaintiff's retaliation claims and disparate treatment claims against Massey and Goldstein will be dismissed with prejudice.

CONCLUSION

For the foregoing reasons, Defendants' motion to compel arbitration is denied. Defendants' motion to dismiss is granted with respect to Plaintiff's retaliation claims and her disparate treatment claims against Massey and Goldstein but denied in all other respects. Plaintiff may file a motion for leave to file a Second Amended Complaint regarding the deficient claims within **21 days from the date of this order**.  Any such motion must comply with the applicable federal and local rules of procedure, and include Plaintiff's proposed Second Amended Complaint, as well as a redline comparing that pleading to Plaintiff's First Amended Complaint.

This Memorandum Order resolves docket entry no. 34.  This case will be referred to Magistrate Judge Wang for general pretrial management.

SO ORDERED.

Dated: New York, New York
       July 8, 2024

                                            /s/ Laura Taylor Swain
                                            LAURA TAYLOR SWAIN
                                            Chief United States District Judge